In re MAJOR DYNAMICS, INC., a California corporation, Debtor.

Bankruptcy No. 81–00821–P.

United States Bankruptcy Court, S. D. California.

Nov. 5, 1981.

Patrick C. Shea and Greg Roper, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for Official Creditors Committee.

Allan Goldstein, Dept. of Justice, Washington, D. C., for the U. S.

Leo Sullivan of Oliver, Sullivan & Cummings, San Diego, Cal., for debtor.

## MEMORANDUM OF DECISION AND ORDER

ROSS M. PYLE, Bankruptcy Judge.

The Official Creditors Committee's Motion for Temporary Stay of Internal Revenue Service Audits, Assessments and Collections came on regularly for hearing on August 4, 1981. Patrick C. Shea and Greg Roper of Luce, Forward, Hamilton and Scripps appeared for the Official Creditors Committee, Allen Goldstein of the Department of Justice appeared for the United States of America and Leo Sullivan of Oliver, Sullivan and Cummings, appeared for the Debtor. The Court, having considered the evidence, arguments, and briefs of counsel, now renders its Memorandum of Decision.

## FACTS

The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on March 16, 1981. Its business prior to its filing was the sale of solar energy panel packages to individual purchasers. Each was to be operated as an independent business venture. The packages were bought for a downpayment with the balance due on a promissory note. The purchaser could then retain a management firm to rent out the panels and the rental income would be allocated to payment of the promissory note, management fees and a return to the purchaser. The transaction was designed to provide a substantial tax shelter by virtue of the investment tax credit, solar energy tax credit, depreciation, deduction for management fees and other such potential tax benefits.

The Debtor obtained approximately 1,172 purchasers for its solar energy panel business packages. However, it failed to supply the promised product to these investors, thus leading to the filing of its petition in bankruptcy. The Debtor's unsecured creditors consist entirely of these investors.

The Internal Revenue Service ("IRS") has been auditing and assessing deficiencies and penalties against the individual purchasers arising from the credits and deductions they claimed on their 1979 and 1980 income tax returns.

The Official Creditors Committee filed the within Motion for Temporary Stay of Internal Revenue Service Audits, Assessments and Collections requesting the Court grant a six month stay of IRS audits, assessments and collections against these unsecured creditors. The Official Creditors Committee argues that the aggressive audit stance of the IRS threatens to hopelessly fractionalize the unsecured creditor body so that the reorganization of the Debtor will be impossible.

The IRS opposes this motion, asserting that 26 U.S.C. § 7421(a) ("the anti-injunction statute")[1] is an absolute bar to this Court restraining the activities of the IRS. The IRS further argues that, even if it is assumed arguendo that the anti-injunction statute does not apply, this Court is without jurisdiction to grant such an injunction.

The Official Creditors Committee argues that the Court has jurisdiction regardless of the anti-injunction statute on the authority of Bostwick v. United States, 521 F.2d 741 (8th Cir. 1975).

## DISCUSSION

In the Bostwick case, the Court held that the Bankruptcy Court had the power to enjoin the assessment and collection of taxes by the IRS in order to protect its jurisdiction, administer the bankruptcy estate in an orderly and efficient manner, and fulfill the overriding policy of the Bankruptcy Act which is the rehabilitation of the debtor.[2] However, in that case the court was dealing with an assessment and collection of a tax against the debtor, not a creditor of the debtor, which, argues the IRS, makes the Bostwick case distinguishable from the case at bar. The Court, it maintains, cannot extend its jurisdiction to IRS activity vis a vis creditors of the debtor.

■ This Court does not agree that its jurisdiction is so limited. The Bostwick decision is one example of the proposition that the Court has jurisdiction to enjoin the IRS from the assessment and collection of taxes despite the anti-injunction statute if such activity interferes with the orderly administration of the estate or the rehabilitation of the debtor. See Bostwick v. United States, supra.

As the Bostwick court stated:

"We believe that the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced

---

1. 26 U.S.C. § 7421(a) provides in pertinent part that "... no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

2. The Bostwick case was decided under the Bankruptcy Act, which has been supplanted by the Bankruptcy Reform Act of 1978, Pub.Law 95–598 ("Bankruptcy Code"). However, the basic policies of the two are unchanged as far as here pertinent.

that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act."

*Bostwick v. United States,* 521 F.2d 741, 744 (8th Cir. 1975).

That decision logically determined that the complete scheme of the Bankruptcy Act superseded the general policy of the anti-injunction statute. Particular attention was given to the jurisdictional grant of § 2(a)(2A) of the Bankruptcy Act [former 11 U.S.C. § 11(a)(2A)] and the scheme there provided for the determination of dischargeability of tax debts.

The Bankruptcy Reform Act of 1978 expanded this Court's jurisdiction. *See* 28 U.S.C. § 1471. The Bankruptcy Code, as a counterpart to former Section 2(a)(2A) of the Act, has Section 505 which provides similarly for the determination of tax debt amounts or legality.[3]

The jurisdictional grant of § 505 is not, by its terms, limited to a determination of tax liability of the debtor.[4]

The legislative history of § 505 indicates that Congress' focus was on the tax obligations of the debtor and/or the debtor's estate.[5] Nowhere does it appear that Congress considered whether § 505 should apply to the tax obligations of a third party, such as a creditor of the estate.[6] However, de-

---

**3.** § 505(a)(1) Except as provided in paragraph (2) of this subsection, the court may *determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.*

(2) The court may not so determine—

(A) *the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;* or

(B) any right of the estate to a tax refund, *before the earlier of*—

(i) 120 days after the trustee properly requests such refund from the governmental *unit from which such refund is claimed;* and

(ii) a determination by such governmental unit of such request.

(b) *A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax.* Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, *and any successor to the debtor are discharged from any liability for such tax*—

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after

such request or within such additional time *as the court, for cause, permits;*

(2) upon payment of the tax determined by the court, after notice and a hearing, after *completion by such governmental unit of such examination;* or

(3) upon payment of the tax determined by *such governmental unit to be due.*

(c) Notwithstanding section 362 of this title, after determination by the court of a tax under *this section, the governmental unit charged* with responsibility for collection of such tax may assess such tax against the estate, the debtor, *or a successor to the debtor, as the case* may be, subject to any otherwise applicable law.

11 U.S.C. § 505 (Supp. III 1979).

**4.** Note the language in § 505(a)(1), *supra* note 3, "*. . . any tax, any* fine, or any penalty *. . .*" [Emphasis added.]

**5.** 124 Cong.Rec. S 17426–S 17428 (daily ed. Oct. 6, 1978), *Collier on Bankruptcy,* Appendix 3, pp. X–52 to X–58 (15th ed.); 124 Cong.Rec. H 11110–H 11111 (daily ed. Sept. 28, 1978), *Collier on Bankruptcy,* Appendix 3, pp. IX–128 to IX–131 (15th ed.).

**6.** Nowhere in the legislative history does it appear that Congress considered the question of any broader jurisdiction being brought into play by the provisions of § 505. In fact in the explanation of the final compromise between the two houses of Congress concerning § 505 the Congressional Record states in part:

"The House amendment authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of *the debtor or the estate.*" [Emphasis added.]

spite the legislative history, this Court's analysis of the scope of § 505 must begin with the language of the statute itself. As stated by the Supreme Court: "When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n.29, 98 S.Ct. 2279, 2296 n.9, 57 L.Ed.2d 117 (1978). *See also Ex Parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949). There are, of course, circumstances in which reliance on the plain language of a statute alone would result in a significant alteration of the pervasive regulatory scheme of which the statute is a part. In such cases the court must look beyond the plain language of a statute to the legislative history. *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 23–24, 96 S.Ct. 1938, 1948, 48 L.Ed.2d 434 (1976).

█ In the present case, as in *Bostwick*, there is no reason to look beyond the plain meaning of the statute. The plain language of § 505(a)(1) provides, subject to the limitations in § 505(a)(2), that the bankruptcy court may determine the amount or legality of any tax. It follows that the Bankruptcy Court has jurisdiction to determine disputes between third party creditors and the IRS in an appropriate case. This result is in line with the general policy of the Bankruptcy Code to allow the Bankruptcy Court to resolve all disputes affecting a debtor's estate.

█ Even if the Court narrowly construed § 505 so as to exclude the tax disputes of creditors from its jurisdiction under § 505, jurisdiction would exist under the broad jurisdictional grant of 28 U.S.C. § 1471 as implemented by 11 U.S.C. § 105.

By enacting 28 U.S.C. § 1471, Congress vested the Bankruptcy Court with jurisdiction over all civil proceedings "arising in or related to cases under Title 11 [of the United States Code]." [7] An IRS investigation or audit of a creditor of a debtor's estate, while probably not "arising under", could certainly be "related to" a case under title 11. The Court has the power under § 105 to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [title 11]." It would certainly be within the Court's power to enjoin IRS investigations of third party creditors that threatened the orderly and efficient administration of an estate.

This Court concludes, therefore, that the jurisdictional grant to this Court could extend to tax disputes of third parties other than the debtor *provided, however*, that the IRS activity to be enjoined directly affected the debtor or the estate, and that the exercise of such jurisdiction was necessary to the rehabilitation of the debtor or the orderly and efficient administration of the debtor's estate.

█ Here the court is requested to exercise its jurisdiction to enjoin the IRS from auditing the creditors of the Debtor upon the basis that the potential fractionalization of the creditor body, resulting from some creditors being audited and others not, will somehow interfere with the rehabilitation of the Debtor. This potential interference with the Debtor's rehabilitation is too speculative to justify such a remedy.

The Court recognizes the uniqueness of this unsecured creditor body. The creditors' interests are similar in the sense that all creditors desire to preserve their potential tax shelter through rehabilitation of the Debtor. However, if the IRS chooses to audit all of the unsecured creditors, there is no reason for the Court to conclude that the unsecured creditors will in fact be fractionalized. If the creditor body does split into various factions and their interests become diversified as the result of the IRS activities, they become no more fractionalized than a creditor body in a typical reorganization case.

---

124 Cong.Rec. S17426 (daily ed. Oct. 6, 1978), *Collier on Bankruptcy*, Appendix 3, pp. X–54 (15th ed.).

**7.** This pervasive jurisdictional grant carries with it the concommitent discretion to abstain from its exercise in the interest of justice. *See* 28 U.S.C. § 1471(d).

The only potential impact on the administration of the Debtor's estate of these audits is that the creditors' votes on a plan of reorganization may be affected by the various tax consequences occasioned by the plan, which consequences may differ from creditor to creditor. It is highly speculative at this time to attempt to forecast what the creditor body may do with respect to any reorganization plan regardless of whether they are or they are not audited, particularly where no plan has been presented.

Furthermore, the creditors would be subject to audit at the expiration of the temporary injunction requested by the Official Creditors Committee. If such an audit is expected to have the tremendous impact on the unsecured creditors as alleged by the Official Creditors Committee, then the potential for such an audit and its potential impact on the unsecured creditors in light of whatever plan is presented would undoubtedly have to be included in the Debtor's Disclosure Statement required under 11 U.S.C. § 1125. Otherwise, the creditors would be inadequately advised of the plan's consequences. Such a disclosure would likely have the same fractionalizing impact as the audits.

The activities of the IRS in this case as they relate to the Debtor's unsecured creditors is of no concern to the Debtor except by way of speculation on how such creditors might vote on any reorganization plan. The Court sees no point in exercising its jurisdiction to enjoin the IRS upon the facts here presented. Therefore, the Court denies the motion of the Official Creditors Committee for a temporary stay of IRS audits, assessments and collections.

### CONCLUSION

The Motion for Temporary Stay should be denied.

IT IS SO ORDERED.