In re **BRANDT–AIRFLEX CORP.**, Debtor.

**BRANDT–AIRFLEX CORP.**, as debtor-in-possession, Plaintiff,

v.

**LONG ISLAND TRUST COMPANY**, the New York State Tax Commission, and the United States of America (Department of the Treasury, Internal Revenue Service), Defendants.

Bankruptcy No. 885–50219–18.
Adv. No. 886–0128–18.

United States Bankruptcy Court,
E.D. New York.

Feb. 6, 1987.

Randy M. Kornfeld, Lester A. Lazarus, P.C., New York City, for debtor.

Michael Saltzman, Saltzman & Holleran (Co-Counsel) New York City, for debtor.

C. Gayden Wren, Cullen & Dykman, Garden City, N.Y., for Long Island Trust Co.

Jonathan N. Helfat, Otterbourg, Steindler, Houston & Rosen, New York City, for Creditors Committee.

Robert Drinan, Asst. Atty. Gen., Mineola, N.Y., for NYS Tax Commission.

Bridget Rowan, Tax Div., U.S. Dept. of Justice, Washington, D.C., for IRS.

C. ALBERT PARENTE, Bankruptcy Judge.

Brandt-Airflex Corp., as debtor-in-possession ("Brandt"), commenced the captioned adversary proceeding pursuant to Part VII of the Rules of Bankruptcy Procedure. The complaint seeks a declaratory determination of Brandt's tax liability, if any, for delinquent withholding taxes for the years 1983, 1984 and the first quarter of 1985. The taxes are due and payable to the Internal Revenue Service ("IRS") and to the New York State Tax Commission ("NYS Tax Commission") under the provisions of I.R.C. § 3102(a), *Deduction of tax from wages,* and § 3402(a), *Income tax collected at source* (1979), and New York State Tax Law § 675, *Employer's liability for withheld taxes.*

Brandt contends that as a causal consequence of an "Overdraft Financing Agreement" which superseded a pre-existing secured loan instrument with the Long Island Trust Company ("LITC"), the tax liability deflected to LITC as the employer "in fact," thereby rendering LITC liable for the delinquent taxes. Brandt *inter alia* cites title 26, Sections 3505(a), (b) and (c) of the Internal Revenue Code, and Section 678, New York State Tax Law (McKinney 1975), and 11 U.S.C. § 505 (1979) in support of its contention.

All of the defendants have moved for a dismissal of the adversary proceeding upon the following grounds: (1) the bankruptcy court lacks subject matter jurisdiction to grant the relief prayed for by Brandt; (2) the complaint fails to state a claim upon which relief can be granted; (3) IRS and NYS Tax Commission invoke the doctrine of sovereign immunity as a bar to the action; and (4) LITC contends that the bankruptcy court lacks in personam jurisdiction asserting that it is not a proper party to the action.

FACTS

Brandt is engaged in the business of fabricating, finishing and selling metal products used in the construction industry. The company employs approximately sixty people.

Brandt filed a Chapter 11 petition in bankruptcy on February 13, 1986 and continues to operate as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 (1979).

The United States filed a proof of claim for unpaid employment taxes due and payable to the IRS pursuant to I.R.C. §§ 3102(a) and 3402(a) (1979), for 1983, 1984 and the first quarter of 1985 in the sum of $513,264.89.

On September 25, 1986, the NYS Tax Commission filed an amended claim against the estate for unpaid taxes pursuant to New York State Tax Law § 675 (McKinney 1975), in the sum of $11,847.40.

In June, 1979 Brandt and LITC entered into a secured loan agreement which was renegotiated in 1983, due to the debtor's deteriorating financial position.

The new agreement ("Overdraft Financing Arrangement") permitted LITC to assume financial control over Brandt in exchange for an additional line of credit.

Under the terms of the Overdraft Financing Agreement, LITC honored preapproved checks for Brandt's employees' wages. LITC was to notify Brandt before a check was issued if it would not be honored. This system was devised to avoid "bouncing" checks written on Brandt's ac-

count. The statements made at the hearing are ambiguous as to why these procedures failed, but it is clear that Brandt's checks to the taxing authority for payment of withholding taxes were not honored.

For the years 1983, 1984 and the first quarter of 1985, LITC advanced Brandt $2,200,000.00 for employee wages, but failed to provide any funds for the payment of withholding taxes pursuant to I.R.C. §§ 3102(a) and 3402(a) and New York State Tax Law § 675 (McKinney 1975).

DISCUSSION WITH FINDINGS AND CONCLUSIONS OF LAW

A. JURISDICTION

The first issue that the court will address is whether it has subject matter jurisdiction. (The remaining issues will be treated sequentially.)

Title 28, Section 157(b)(3) contains a mandate requiring bankruptcy judges to decide *in limine* whether a proceeding is a core proceeding or is a proceeding that is otherwise related to a case under title 11.

■ Responsive to the statutory threshold requisite, the court finds that the instant adversary proceeding constitutes a core proceeding. Title 28 U.S.C.S. § 157(b)(2)(A) empowers the bankruptcy court to hear and determine matters integral to the administration of the estate. As heretofore noted, the IRS and the NYS Tax Commission have filed proofs of claim for delinquent taxes. The allowance or disallowance of claims is definitively earmarked and enumerated as a core proceeding by title 28 U.S.C. § 157(b)(2)(B) (1986).

The defendants have not in written context or upon oral argument addressed the Section 157(b)(2)(B) "core" aspect of the case. Rather, the thrust of defendants' disputation articulated by the IRS and subsumed by the NYS Tax Commission and LITC posits on the assertion that the court lacks jurisdiction or authority to fix the tax liability of LITC, a third-party non-debtor.

The defendants maintain that I.R.C. § 3505 (1979), and corresponding New York State Tax Law § 689(b) (McKinney

1975), comprise alternate remedial means available to the taxing authorities for the collection of delinquent taxes. Moreover, that said sections are designed exclusively for the benefit of the taxing authorities, thus tacitly negating any involvement by the bankruptcy court as intrusive. The pertinent text follows:

Section 3505(b) provides as follows:

Personal liability where funds are supplied.—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

Section 3505(c) provides as follows:

Effect of payment.—Any amounts paid to the United States pursuant to this section shall be credited against the liability of the employer.

In adjunctive mode it is argued that title 11 U.S.C. § 505, *Determination of tax liability* (1986), contains a limitation factor restricting its jurisdictional ambit to matters concerning the tax liability of a debtor or debtor's estate only. Accordingly, its provisions do not impact upon or embrace the liability of a third-party non-debtor. The pertinent text of the statute follows:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

In diametric posture to defendants' contentions, Brandt argues that the above statutes are applicable and that the bankruptcy court's jurisdictional reach encompasses the subject matter in issue.

Apart from a patent *ipse dixit* interpretation of the relevant statutes, the defendants rely upon scant and noncogent case references. The three cases cited by the defendants, to wit, *viz., In re Interstate Motor Freight System,* 62 B.R. 805 (Bankr. W.D.Mich.1986) (*"Interstate Motor"*); *United States v. Huckabee Auto Co.,* 783 F.2d 1546 (11th Cir.1986); *In re Booth Towing Services,* 53 B.R. 1014 (W.D.Mo. 1985), *reh'g. denied,* 60 B.R. 372 (1985), are palpably inaccordant and readily distinguishable from the fact pattern and the law applicable to this case.

In sum, the above cases pertain to actions initiated by non-debtors seeking to enjoin the IRS from imposing and collecting tax penalties against them pursuant to various provisions of the federal and state tax laws.

A synoptic analysis of the cases follows: In the *Booth* case, a former officer of the debtor corporation commenced an adversary proceeding in the bankruptcy court to enjoin the IRS from collecting a personal penalty tax assessment, separate and distinct from the withholding tax due from the debtor's estate. Likewise, in *Huckabee* a former employee of the debtor's corporation initiated an adversary proceeding to restrain the IRS from collecting a separate penalty tax assessed against him. In *Interstate Motor,* a third-party plaintiff sought to enjoin the IRS from collecting an unpaid excise tax.

The substantive and fundamental distinctions between the above cases and the case at bar is conspicuous. The plaintiff herein is clearly not seeking to enjoin the taxing authorities from their statutory duty to

collect taxes, but rather as a debtor-in-possession it has petitioned this court for a declaratory determination clarifying its tax liability vis-a-vis that of a lender (LITC). Brandt alleges that LITC totally controlled the financial life and affairs of the debtor, and in such capacity it presumptively acquired the mantle of "employer in fact" when it elected to pay only net wages and omitted to contribute the collateral quantum percentile of the employees' withholding taxes.

Title 26 U.S.C., I.R.C. § 3402(d) (1986) defines "employer" as "the person for whom an individual performs or performed any service, of whatever nature, as the employer of such person...." Subdivision (d)(1) of Section 3401, in pertinent part, adds the following:

> If the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" means *the person having control of the payment of wages....* (Emphasis added.)

To insure that "such persons" could be held liable for employment taxes, Congress added I.R.C. § 3505, *Liability of third parties paying or providing for wages.*

The legislative history reveals that Congress clearly intended to hold those entities providing financing for employees' wages responsible for the attendant withholding taxes. The Senate Report states in salient part:

> where third persons financing employers' payrolls—subject to the conditions set forth below—they should be liable for the withholding taxes. [The committee] ... sees no reason for distinguishing between the portion of the total wages which is owed and should be paid to employees (the "net" wages), and the portion of the wages which is owed and should be paid to the Government in the form of withholding taxes....
>
> \*    \*    \*    \*    \*    \*
>
> Third persons who pay wages directly to employees ordinarily have full access to payroll information, and, therefore,

have essentially the same ability to determine the amount of wages due, and control over the funds available for payment, as is usually true in the case of employers....

S.Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3743.

Prior to 1966 it was a common practice of third-party lenders to pay only net wages. Recourse against the insolvent employer by the taxing authority often proved ineffectual. Actions against the third-party lenders for recovery of the taxes was unavailable to the taxing authorities since the third-parties were not considered "employers" under the then existing provisions of law. To solve the dilemma and to stem the resulting loss of revenue, Congress enacted title 26 U.S.C., I.R.C. § 3505. The section codified the liability of lenders, sureties and other third-parties directly paying wages or providing the funds for the payment of wages. I.R.C. § 3505; S.Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722. Section 689(b) *New York State Tax Law* (McKinney 1975), incorporates and tracks the provisions of I.R.C. § 3505(b).

Albeit the incidence of tax accrual in this case is innately binary, and Brandt and LITC as fiduciaries are in *pari materia,* the collection facet of the tax is in the singular mode. Only one tax is due and payable respectively to the taxing authority. I.R.C. § 3505 subdivision (c) states: "Any amounts paid to the United States pursuant to I.R.C. § 3505 shall be credited against the liability of the employer." Consequently, the statutory scheme contemplates a pro tanto reduction of the common law employer's liability upon collection of the tax from the third-party non-debtor lender.

Subdivision (b) of I.R.C. § 3505 limits the lender's exposure to 25% of the funds loaned to the employer. In this case, 25% of the amount loaned exceeds the total tax due. Arithmetically, $2,200,000.00 was advanced by LITC for net wages; 25% of that

sum equates to $550,000.00. Tax due to IRS $513,264.89, NYS Tax Commission $11,847.40, for a total of $525,112.29.

Constant with the above precepts, the plaintiff herein may conceivably be absolved of all liability if LITC is found liable for the payment of the subject taxes and the claims of the tax authorities may be expunged.

▪ Section 505(a) of title 11 U.S.C. states: "The court may determine the amount and legality of any tax." The unambiguous sweep of the statutory text is explicitly in conformity with the plain meaning rule and clearly confers jurisdiction upon the bankruptcy court to render judgment determining the tax liability of a non-debtor third-party lender. 3 *Collier on Bankruptcy*, ¶ 505.04 (15th ed. 1984).

A cogent statement of the plain meaning rule appears in *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Mr. Justice Day stated: "Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise and the rules which are to aid doubtful meaning need no discussion." *Id.* at 194. A rare exception to the plain meaning rules would perhaps obtain where it produces a result so absurd or wholly impractical, convincing the Court that the intention could not have been to use the words in their plain signification. *Id.* at 490, 37 S.Ct. at 196.

Defendants' supposition that the legislative history pertaining to 11 U.S.C. § 505(a) supplants its plain meaning ousting the bankruptcy court from jurisdiction lacks merit. The *Interstate Motor* decision, *supra*, in great part influenced by the legislative history of Section 505 and upon which the defendants particularly rely is not germane nor is it identical to the facts of this case, and consequently has no binding effect.

A search by the court for specific case precedent involving the framed issues was nonproductive. The question posed is apparently of first impression. A number of circuits and lower courts have rendered decisions of recent vintage interpretative of I.R.C. § 3505 and 11 U.S.C. § 505. However, the decisions are diametric and dissonant.

The Seventh Circuit Court of Appeals in *United States v. Associates Commercial Corp.*, 721 F.2d 1094 (7th Cir.1983), held that a lender must receive a notice of assessment pursuant to I.R.C. § 6303 to be held liable. *Accord, United States v. Merchants Nat'l. Bank of Mobile*, 772 F.2d 1522 (11th Cir.1985), *appeal pending*, U.S. Sup.Ct.

In *United States v. Jersey Shore State Bank*, 781 F.2d 974 (3rd Cir.1986), *aff'd.*, — U.S. —, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987), the 3rd Circuit rejected the reasoning of the 7th and 11th Circuits by holding that I.R.C. § 3505 does not require that a third-party lender receive notice of assessment from IRS in order to be held liable, stating: "Congress envisioned a system in which third-parties would take their potential liability under Section 3505 into consideration at the time they entered into the transaction exposing them to liability under the statute ... that the requirement of notice serves no useful purpose but simply adds a formalistic requirement not statutorily contemplated."

It is noted that the Supreme Court on January 20, 1987 (syllabus No. 85–1736) affirmed the opinion of *Jersey Shore State Bank, supra.*

In what may be termed a seminal case, *viz., Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975), decided under the Bankruptcy Act § 2(a)(2A), adapted by § 505(a) of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 and amendments of 1984, Pub.L. No. 98–353, without basic policy change, the court stated:

We believe that the overriding policy of the Bankruptcy Act [now Code] is the rehabilitation of the debtor and we are convinced that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly

and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act [Code].

*See, In re Major Dynamics, Inc.,* 14 B.R. 969 (Bankr.S.D.Cal.1981). The court noted that the bankruptcy court is vested with jurisdiction over all civil proceedings arising in or related to bankruptcy cases and the canopy of jurisdiction encompasses tax disputes of third-parties other than the debtor if it is vital for the rehabilitation of the debtor and to insure an orderly and efficient administration of the debtor's estate, further holding: "In the present case, as in *Bostwick,* there is no reason to look beyond the plain meaning of the statute. The plain language of section 505(a)(1) provides, subject to the limitations in section 505(a)(2) that the bankruptcy court may determine the amount or legality of any tax. It follows that the bankruptcy court has jurisdiction to determine disputes between third-party creditors and the IRS in an appropriate case. This result is in line with the general policy of the Bankruptcy Code to allow the bankruptcy court to resolve all disputes affecting a debtor's estate." *In re Major Dynamics,* 14 B.R. at 972.

In *Fidelity Bank, N.A. v. United States,* 616 F.2d 1181 (10th Cir.1980), the Bank, a third-party non-debtor, brought suit for a refund of penalties assessed for its alleged complicity in the employer's failure to timely deposit or pay FICA taxes required to be withheld from its employees' wages contending that it was not a "prevailing party" within the meaning of 26 U.S.C.A. I.R.C. § 3505(b). Judgment was rendered in favor of the IRS on its counterclaim premised on the finding that the Bank had actual notice of the common law employer's inability to pay the taxes due since the Bank was in control of the employer's income and every time the Bank supplied funds for the payment of wages, it had to know that it would be liable for the payment of taxes. The court concluded that the situation envisioned the application of § 3505(b). *Accord, In re H & R Ice Co., Inc.,* 24 B.R. 28 (Bankr.W.D.Mo.1982); *United States v. Hunter Engineers & Constructors, Inc.,*

789 F.2d 1436 (9th Cir.1986), *appeal pending,* U.S.Sup.Ct.; *Jon Co. v. United States (In re Jon Co.),* 30 B.R. 831 (D.Colo.1983).

The Supreme Court's decision in *South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), dealing with the Anti-Injunction Act, elicits meaningful dictum. Justice Blackmun concluded that the Anti-Injunction Act is not intended to bar an action by an aggrieved party where Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax. Implicity Brandt has no alternative legal way to challenge the validity of the tax here in issue.

In light of the fact pattern of this case in consonance with the pertinent tenets of law expressed in the cited cases, the resistant posture of the IRS and the NYS Tax Commission is atypical and perplexing. The format and norm in Section 3505 tax collection matters has been for the taxing authorities to pursue the viable and ready source of recovery stylistically referred to as the "deep pocket." LITC was the proximate cause of the tax accrual and constitutes the "deep pocket," whereas Brandt was the passive actor in the tax delinquency scenario, and may be termed the "short pocket." Moreover, in its most favorable light under the terms of the proposed plan of arrangement, the IRS and NYS Tax Commission may recover the tax delinquency over the span of six years. In practical perspective, pursuit of their claims against the debtor-in-possession may very well defeat their purpose by placing a substantial burden on the implementation and consummation of the plan, jeopardizing the rehabilitative endeavor of the debtor-in-possession and concomitantly thwarting the underlying policy of bankruptcy law.

The court, cognizant of the split of authority and the conflict engendered by dissonant decisions relative to the jurisdictional scope of Section 505(a), adopts the logic and reasoning of the line of cases which construe Section 505(a) according to its plain meaning. The compelling rationale actuating the court's findings is umbilically

tied to the overriding policy and ultimate aim of bankruptcy law, which confers upon the bankruptcy courts the inherent right to protect its jurisdiction. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

Premised upon the above findings and principles of law in juxtaposition with the weight of authority and the equitable principles generic to bankruptcy law, the defendants' asseveration that this court lacks subject matter jurisdiction is rejected.

Accordingly, the court concludes that it has jurisdiction and the statutory authority to render judgment. Title 28 U.S.C. § 1334 (1986); 28 U.S.C. §§ 157(2)(b)(K) and (L) (1986); 11 U.S.C. § 505 (1986).

## B. SUFFICIENCY OF COMPLAINT

Traditionally, the federal rules of pleadings have been liberally construed. *Sinclair v. Kleindienst,* 711 F.2d 291 (D.C.Cir. 1983). In adjudicating a motion to dismiss a complaint under Rule 12(b)(6), F.R.Civ.P., the court is required to view the facts "in the light most favorable to the plaintiff." *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 3A Moore's Federal Practice ¶ 12.08 (2d ed. 1984). In comport with the foregoing liberal mandate, the court should deny a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *In re Black & Geddes, Inc.,* 16 B.R. 148, 151 (Bankr.S.D.N.Y.1981). Moreover, the likelihood that the plaintiff will prevail is immaterial. *Boudeloche v. Grow Chem. Coatings Corp.,* 728 F.2d 759 (5th Cir. 1984).

The Court in *Doe v. United States Dep't. of Justice,* 753 F.2d 1092 (D.C.Cir.1985), expounding on the doctrine of liberal construction, stated a complaint may not be dismissed even if the request for relief is inappropriate if it can be ascertained facially that some form of relief may be granted. *Doe v. United States Dep't. of Justice,* 753 F.2d at 1104 (D.C.Cir.1985). Accord, *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed. 292 (1978) (citing treatise).

The burden of proof that the complaint fails to state a legally cognizable claim falls upon the moving party. *Johnsrud v. Carter,* 620 F.2d 29 (3rd Cir.1980). In deciding the motion, the court must presume all factual allegations of the complaint can be true and all reasonable inferences are made in favor of the plaintiff. *L'Orange v. Medical Protective Co.,* 394 F.2d 57 (6th Cir.1968).

When measured against the above standards, the court finds that Brandt's complaint does state a valid claim for relief. The defendants have failed to meet their burden of proof. Consequently, defendants' motions premised on the ground that the complaint fails to state a cognizable cause of action upon which relief can be granted is denied. Rule 12(b)(6), F.R.Civ.P.

## C. SOVEREIGN IMMUNITY

As a general rule, governmental bodies enjoy immunity from suit unless expressly waived. *Hawaii v. Gordon,* 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963). In enacting the Bankruptcy Reform Act of 1978 (Bankruptcy Code), Congress included Section 106. This section defines the circumstances in which sovereign immunity is deemed waived in a bankruptcy case. Subdivision (a) provides: "A governmental unit is deemed to have waived sovereign immunity with respect to claims arising out of the same transaction as a claim filed by the governmental unit." 11 U.S.C. § 106(a) (1978).

The legislative impetus rests on the concept that it would be eminently unfair to permit the government to enforce claims against the debtor's estate but escape any liability to the debtor's estate by invoking the doctrine of sovereign immunity. H.R. Rep. No. 595, 95th Cong., 1st Sess. 317 (1977); *reprinted in* 1978 U.S.Code Cong.

& Admin.News 5963; S.Rep. No. 989, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787.

Section 106 reflects and codifies decisions rendered in *Gwilliam v. United States,* 519 F.2d 407 (9th Cir.1975); and *In re Dolard,* 519 F.2d 282 (9th Cir.1975). In light of the manifest intent of Congress clearly expressed in Section 106(a) that the filing of a claim is deemed a waiver of sovereign immunity, the contention by the IRS and the NYS Tax Commission that this court's jurisdiction is interdicted by the doctrine of sovereign immunity is frivolous and appears to be no more than a "throw-in" defense ignoring the dictate of 11 U.S.C. § 106.

■ Accordingly, the court concludes that the defense of sovereign immunity is inapt and does not impede or vitiate the court's jurisdiction to hear and determine the amount or legality of the tax here in issue. *In re Datair Systems Corp.,* 37 B.R. 690 (Bankr.N.D.Ill.1983).

### D. IS LITC A PROPER PARTY TO THE ACTION?

LITC argues that it is not a proper party to the action and avers that it has been named merely as "window dressing." Tr. at 27. The averment is inconsistent with the standards set forth under F.R.Civ.P. 19(a)(2)(ii) made applicable in bankruptcy pursuant to Rule 7019, Rules of Bankruptcy Procedure:

> A person ... shall be joined as a party in the action if ... (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claim interest....

Federal courts have long accepted the Supreme Court's definition of an indispensable party as delineated in the early case of *Shields v. Barrow,* 17 How. 130, 15 L.Ed. 158 (1854). The Court stated:

> Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience [are indispensable parties].

■ Clearly, LITC is a person who may be affected by the outcome of this proceeding and pursuant to the above definition, is an "indispensable party" within the purview of Rule 19 F.R.Civ.P. The scenario of this case establishes that LITC overtly elected to pay only net wages with actual knowledge that Brandt was totally dependent upon it for its financing and unable to provide for the required deposits and payment of withholding taxes. The fact that LITC is neither a creditor nor a debtor in this case does not preclude LITC from being named a party in this action. *See, In re Balwin-United Corp.,* 52 B.R. 541 (Bankr.S.D.Ohio 1985); *In re Climate Control Engineers, Inc.,* 51 B.R. 359 (Bankr.M.D.Fla.1985).

Accordingly, the court finds that LITC is a proper and necessary party to this action.

### RULE 12(b)(6) AND RULE 56, F.R.CIV.P.

A motion under Rule 12(b)(6) to dismiss for failure to state a claim on which relief can be granted may be treated by the court as a motion for summary judgment and disposed of pursuant to Rule 56 F.R.Civ.P.: *Samara v. United States,* 129 F.2d 594 (2d Cir.), *cert. denied,* 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942); *Kaufman v. Scanlon,* 245 F.Supp. 352, 353 (E.D.N.Y. 1965). By notice dated January 20, 1987, all parties were given a reasonable opportunity to present any other material pertinent to a motion under Rule 56, F.R.Civ.P. All the parties have failed to respond except for the IRS and Brandt. The court having duly considered all of the pleadings and documentation submitted, finds that the defendants have not raised any genuine issue with reference to the material questions of fact in issue. Consequently, either

Brandt or the defendants should be granted judgment as a matter of law.

Section 11 U.S.C. § 505 in congruent context vests the court with discretion to declare the amount or legality of any tax pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201(a)) which provides:

> In a case of actual controversy, except with respect to Federal taxes other than ... a proceeding under Section 505 or 1146 of title 11, any court of the U.S. ... may declare the rights and other legal relationships of any interested party seeking such declaration.

*Maryland Casualty Co. v. Rosen,* 445 F.2d 1012, 1014 (2d Cir.1971). The court exposited the enabling criteria for the court to render a declaratory judgment as follows:

> Such relief will be proper only (1) where the judgment will serve the useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.

The ratiocination favoring declaratory judgment accords with the fact that it helps avoid multiplicity of suits. Moreover, the rule is to be construed to secure and foster a just, speedy and inexpensive determination of every action. *See,* 10A Wright, Miller and Kane, *Federal Practice and Procedure,* Civil 2d 2751 (1983). To attain the objectives of the rule, declaratory judgment actions have been liberally construed by the courts.

DISPOSITIVE CONCLUSIONS

■ Premised upon all of the foregoing and in consideration of the equitable principles governing the exercise of bankruptcy jurisdiction, the court dispositively concludes:

1. LITC was a direct cause of the tax accrual.

2. The Overdraft Agreement rendered the plaintiff financially impotent and unable to meet the tax obligation.

3. LITC was the employer in fact and primarily liable for the delinquent taxes.

4. The taxing authorities will not be prejudiced by proceeding to collect the taxes from LITC.

Accordingly, the motions to dismiss are in all respects denied and LITC is declared liable for the unpaid taxes encompassing the periods 1983, 1984 and the first quarter of 1985.