**In re William J. STOECKER, Debtor.**

**Bankruptcy No. 89 B 02873.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 25, 1992.

Opinion Denying Reconsideration
Feb. 23, 1993.

James D. Newbold, Asst. Atty. Gen., Illinois Dept. of Revenue, Chicago, IL, for Illinois Dept. of Revenue.

Thomas Raleigh, Raleigh & Helms, Chicago, IL, Trustee.

Robert Radasevich, Neal, Gerber & Eisenberg, Chicago, IL, for the trustee.

M. Scott Michel, Chicago, IL, U.S. Trustee.

## MEMORANDUM OPINION ON RECONSIDERATION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the objection of Thomas E. Raleigh, Chapter 7 trustee (the "Trustee") for the estate of William J. Stoecker (the "Debtor"), to a proof of claim, as subsequently amended, filed by the Illinois Department of Revenue (the "Department"). For the reasons set forth herein, the Court having considered all the pleadings and evidence adduced at trial by way of testimony and exhibits, sustains the objection and disallows the subject proof of claim.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this objection to claim pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II. *FACTS AND BACKGROUND*

On February 21, 1989, an involuntary petition under Chapter 11 was filed against the Debtor. Thereafter, on March 20, 1989, the Trustee was appointed Chapter 11 trustee of the estate for cause. On February 26, 1990, the case was converted to Chapter 7. The Trustee remained as the Chapter 7 trustee. Many more of the facts, background and history of this case are contained in earlier Opinions. *See In re Stoecker,* 118 B.R. 596, 598–599 (Bankr. N.D.Ill.1990); *In re Stoecker,* 114 B.R. 965, 967–968 (Bankr.N.D.Ill.1990); *In re Stoecker,* 103 B.R. 182, 184–185 (Bankr.N.D.Ill. 1989). Additional background information concerning the related corporate cases is contained in other Opinions of the Court. *See In re Grabill Corp.,* 110 B.R. 356, 358 (Bankr.N.D.Ill.1990); *In re Grabill Corp.,* 103 B.R. 996, 997–998 (Bankr.N.D.Ill.1989).

Upon conversion of the case from Chapter 11 to Chapter 7, the Court by Order dated March 5, 1990, set the 11 U.S.C. § 341 meeting of creditors for March 28, 1990, as required by Federal Rule of Bankruptcy Procedure 2003(a). That Order provided that all proofs of claim were to be filed within ninety days after the section 341 meeting of creditors, on or before June 26, 1990, pursuant to Bankruptcy Rule 3002(c). On November 28, 1990, pursuant to an agreed order, the Debtor's discharge was denied under 11 U.S.C. § 727 in settlement of various filed objections to discharge.

Prior to conversion, the Department filed three proofs of claim on July 25, 1989, when the case was still in its Chapter 11 phase. The first two claims are for withholding tax and Retailers' Occupation/Use Tax (Ill.Rev.Stat. ch. 120, para. 440 *et seq.* and para. 439.1 *et seq.*) owed by the Debtor as responsible officer of The Cook's Cupboard. The amounts of these claims are $12,667.00 and $1,330.21. (Department Exhibit No. 16). The third claim for $222.03 is asserted against the Debtor as responsible officer of Eagle Line, Inc. for Retailers' Occupation/Use Tax. (Department Exhibit No. 16). Thereafter, on November 17, 1989, the Department filed an amended proof of claim, asserting additional taxes owed by the Debtor as responsible officer for The Cook's Cupboard in the amount of $14,630.00. (Answer of Department to Objection to Claim, Exhibit D). The amount of the Department's timely filed proofs of claim totals $14,852.03. No other objections thereto have been filed, thus those claims were deemed allowed under 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f), although the claims for $1,330.21

and $14,630.00 have been withdrawn by the Department. (Department Exhibit No. 18).

On January 21, 1992, approximately a year and a half after the claims bar date, the Department filed the subject contested proof of claim (Trustee's Objection to Proof of Claim, Exhibit B) which represents Retailers' Occupation/Use Tax allegedly owed by the Debtor as responsible officer for Chandler Enterprises, Inc. ("Chandler"). *See* Ill.Rev.Stat. ch. 120, para. 452½ (1991). The basis of the claim (subsequently amended to reflect a reduction per an amended claim dated September 3, 1992) arises from Chandler's purchase of an aircraft in 1988. Chandler was an Illinois Corporation, incorporated on January 24, 1985. (Department Exhibit Nos. 19 and 20). The Debtor was president and sole director, but not the sole officer, of Chandler from 1985 to 1990. *Id.* Chandler was involuntarily dissolved by the Illinois Secretary of State on June 1, 1990. (Department Exhibit No. 20, p. 5).

According to the records of the Federal Aviation Administration, Chandler purchased a Dassault Falcon 50 aircraft from Prewitt Leasing, Inc. on September 30, 1988. (Department Exhibit No. 7). The preceding link in the chain of title also showed on that same date, Jack Prewitt & Associates, Inc. sold the aircraft to Prewitt Leasing, Inc., prior to Prewitt Leasing, Inc.'s sale of the aircraft to Chandler. (Department Exhibit No. 6). The aircraft was previously sold to Jack Prewitt & Associates, Inc. on June 1, 1988, by Opex Aviation, Inc. (Department Exhibit Nos. 5 and 5A). The aircraft was subsequently leased by Chandler to Grabill Corporation for the period of September 30, 1988 through December 30, 1988, at a basic monthly rental of $172,752.25. (Department Exhibit No. 8, p. 00000002332).

Neither Chandler nor Prewitt Leasing, Inc. paid any sales/use tax, withholding tax or income tax on Chandler's purchase of the aircraft. John Anderson, counsel for Chandler and Grabill, issued an opinion concluding that under Illinois law, there was no sale or use tax properly assessable or payable as a result of the purchase of the aircraft by Chandler or the lease of the aircraft by Chandler to Grabill. (Trustee Exhibit No. 3). Such legal opinion was supported by the vice-president of Prewitt Leasing, Inc. who signed a "Certificate Re Occasional Seller Exemption from Illinois Sales and Use Tax" on September 30, 1988. (Trustee Exhibit No. 4).

On March 7, 1990 and June 7, 1990, weeks before the claims bar date, the Department sent Chandler two letters demanding payment of the claimed tax due. (Trustee Exhibit Nos. 3 and 4). Subsequently, on September 7, 1990, a Notice of Penalty Liability was issued against Chandler. (Department Exhibit No. 10). Almost one year later, on August 15, 1991, a Notice of Penalty Liability was issued against the Debtor. (Department Exhibit No. 1). On September 25, 1991, the Department sent the Debtor a demand for full payment of the tax liability claimed. (Department Exhibit No. 13). The Trustee subsequently objected to allowance of this late filed claim pursuant to Bankruptcy Rule 3007. On July 30, 1992 and August 27, 1992, the Court held the trial on this matter. Thereafter, the matter was taken under advisement after submission of post-trial briefs.

## III. *ARGUMENTS OF THE PARTIES*

The Trustee has objected to the late filed claim of the Department on two grounds: (1) the claim was filed after the bar date fixed by Bankruptcy Rule 3002(c), and hence is untimely; and (2) the claim against the Debtor as responsible officer of Chandler is invalid as the underlying purchase of the aircraft by Chandler was an "occasional sale" exempt from sales/use tax.

The Department does not deny that its claim filed on January 21, 1992 is untimely. Instead, the Department contends that the claim should be treated as an amendment to the earlier filed proofs of claim pursuant to Federal Rule of Civil Procedure 15. In the alternative, the Department requests the Court utilize its equitable powers to allow the claim though late filed. The Department explains that it failed to file a timely claim against the Debtor as respon-

sible officer of Chandler because Chandler never registered with the Department for any type of tax, and never filed a tax return with the Department during its corporate existence. By the time the Department discovered that Chandler was engaged in taxable activities and that the Debtor was a responsible officer of Chandler, the claims bar date had passed. The Department maintains, however, that by previously filing responsible officer tax claims, it has clearly evidenced its intention of claiming any and all responsible officer liability against the Debtor and his bankruptcy estate.

The Department contends its efforts to file a timely claim were impeded as a result of Chandler's conduct and omissions. It alleges that Chandler acted improperly in failing to register with the Department or file tax returns regarding its purchase and lease of the aircraft. Moreover, the Department contends that Chandler attempted to conceal the taxability of the transaction by having title to the aircraft transferred from Jack Prewitt & Associates, Inc., a retail seller of aircraft, to Prewitt Leasing, Inc., a purported lessor of aircraft, so that it could claim the "occasional sale" exemption.

The Trustee contends that the sale of the aircraft to Chandler was an "occasional sale" of property at retail, exempt from sales/use tax. The Trustee argues that Anderson's opinion letter properly concluded that the transaction was exempt from taxes. The Department disagrees with this contention and claims that in order to create a sale that was ostensibly exempt from tax, Jack Prewitt & Associates, Inc. sold the aircraft to Prewitt Leasing, Inc. who in turn acted as a nominal "straw man" and immediately thereafter sold it to Chandler. The Department contends the true seller was Jack Prewitt & Associates, Inc., and that the sale was not an "occasional sale" exempt from tax.

## IV. *APPLICABLE STANDARDS*

■ Pursuant to Federal Rule of Bankruptcy Procedure 3002(c), a creditor in a Chapter 7 case is required to file a proof of claim within ninety days after the date first set for the meeting of creditors called under 11 U.S.C. § 341. There are several specific instances where the time for filing proofs of claim may be extended in a Chapter 7 case, none of which are applicable here. *See* Fed.R.Bankr.P. 3002(c). Thus, Bankruptcy Rule 3002(c)(1) requires that a claimant, like the Department, must first move for an extension within the permitted ninety days, which it did not do. The Court's authority to extend the time for filing proofs of claim is also severely limited by Bankruptcy Rule 9006. Pursuant to Bankruptcy Rule 9006(b)(3), the Court is allowed to extend the time for creditor/claimants taking action under Bankruptcy Rule 3002 only "to the extent and under the conditions stated in [the rule]." Fed.R.Bankr.P. 9006(b)(3). Thus, "Bankr.R. 3002(c) is strictly construed as a statute of limitations since the purpose of such a claims bar date is 'to provide the debtor and its creditors with finality' and to 'insure the swift distribution of the bankruptcy estate.'" *In re Robert Stone Cut Off Equipment, Inc.,* 98 B.R. 158, 160 (Bankr.N.D.N.Y.1989) (quoting *In re Johnson,* 84 B.R. 492, 494 (Bankr.N.D.Ohio 1988) and *In re Good News Publishers, Inc.,* 33 B.R. 125, 126 (M.D.Tenn.1983)). *See also In re Chirillo,* 84 B.R. 120, 121–122 nn. 2–3 (Bankr.N.D.Ill.1988) (collecting cases).

Bankruptcy Rule 3002(c) can operate in conjunction with Federal Rule of Bankruptcy Procedure 7015 which incorporates by reference Federal Rule of Civil Procedure 15. Rule 15(c) provides in pertinent part:

An amendment of a pleading relates back to the date of the original pleading when

. . .

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

Fed.R.Civ.P. 15(c). Bankruptcy Rule 7015 provides that "Rule 15 FR Civ P applies in adversary proceedings." Fed.R.Bank.P. 7015. While normally an objection to a

**994**

claim is not a formal adversary proceeding, Bankruptcy Rule 9014 allows courts at any stage of a contested motion or other matter, to extend Bankruptcy Rule 7015, among other rules, to contested matters which includes the Trustee's objection to the Department's claim. *See In re Unroe*, 937 F.2d 346, 349 (7th Cir.1991). No such order or direction was made in this matter pursuant to Bankruptcy Rule 9014.

 The decision to allow an amendment to a proof of claim is within the sound discretion of the Court. *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir.1992); *Unroe*, 937 F.2d at 350; *In re Candy Braz, Inc.*, 98 B.R. 375, 380 (Bankr.N.D.Ill.1988). Amendments to timely filed claims are liberally allowed to modify information or correct omissions in the original claim. *In re Calisoff*, 94 B.R. 1002, 1003 (Bankr.N.D.Ill. 1988). Amendments to proofs of claim are also permitted if "the original claim provided notice to the court of the existence, nature and amount of the claim and that it was the creditors' intent to hold the estate liable." *In re International Horizons, Inc.*, 751 F.2d 1213, 1217 (11th Cir.1985). Amendments to claims are closely scrutinized to ensure that the amendment is genuine rather than an assertion of an entirely new claim. *Candy Braz*, 98 B.R. at 380; *In re AM International, Inc.*, 67 B.R. 79, 81 (N.D.Ill.1986). "[T]o be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first but also reasonably within the amount to which the first claim provided notice." *Id.* at 82.

"[B]ankruptcy courts are not required to permit late amendments which are primarily used as a back-door route to secure bar-date extensions. Were the rule otherwise, a party could effectively help itself to automatic extensions of the bar date without seeking leave of the court." *Stavriotis*, 977 F.2d at 1206. While leave to amend should generally be granted, courts have found it inappropriate in some circumstances. *See Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir.1990) (denial of leave to file amended claim affirmed where party was aware of the facts underlying the claim prior to the filing deadline and pre-

sented no excuse for failing to raise the claim earlier; opposing party would be unduly prejudiced; and delay would impair the public interest in prompt resolution of disputes). "[U]nlike a chapter 11 proceeding, the court reviewing a chapter 7 or chapter 13 proof of claim has no discretion to allow an untimely filed claim on the grounds of excusable neglect." *In re Couzens Warehouse & Distributors, Inc.*, 1991 WL 233314 at *1, 1991 Bankr. LEXIS 1591 at *2 (Bankr.N.D.Ill. Oct. 17, 1991); *In re Smartt Constr. Co.*, 138 B.R. 269, 271 (D.Colo.1992) ("A majority of courts agree that the bar date for Chapter 7 and Chapter 13 proofs of claim cannot be extended for excusable neglect.").

 The Court's authority to allow the late filed claim of the Department is not absolutely limited by statute or rule. Another potential basis for allowing the claim is the Court's equitable powers. This authority was recently discussed by the Seventh Circuit Court of Appeals in *Unroe*, 937 F.2d 346, which noted, "[e]quitable jurisdiction to permit amendments out-of-time does not conflict with, but rather fulfills, the statutory backdrop for bankruptcy proceedings. The bankruptcy court below therefore properly considered equitable matters outside the scope of the test of Fed.R.Civ.P. 15(c) in deciding to permit the late-filed claim as an 'amendment.'" *Id.* at 349–350. The *Unroe* court expressly stated, however, that late filed claims disrupt orderly discharge and should generally be barred. *Id.* at 351.

In *Unroe*, the court permitted the late filing of a claim for income taxes which had been scheduled at a higher amount in the debtor's Chapter 13 plan. The debtor included in her plan of confirmation $15,-000.00 for taxes owed for the years 1982 and 1983. The IRS filed a timely proof of claim for 1982 taxes, but failed to file a claim for 1983 taxes until after the claims bar date. The sum total for both 1982 and 1983 taxes sought by the IRS in its untimely amendment, however, was $10,914.21, approximately $4,000.00 less that the $15,-000.00 the debtor listed as tax liabilities. The court found that neither the debtor nor

the creditors were prejudiced by the allowance of the late filed claim for the 1983 taxes. The court stated, however, that "[t]he result may have been different had the late claim been unscheduled or exceeded the amount in the plan, in which cases the prejudice to the debtor and other creditors would have been more severe." 937 F.2d at 351.

In holding that the bankruptcy courts' equitable powers included the authorization of late filed claims, *Unroe* noted that such an exercise of equity must include identification of factors related to the debtor's notice of a pending claim or excusable neglect by the creditor. *Id.* at 350 n. 5. The holding in *Unroe*, however, did not extend to an entirely new claim filed after the bar date. Specifically, the court noted, "[w]e leave for another case the question whether a judge in equity could permit an entirely new claim filed out of time." *Id.* at 350.

Another contrary approach has been taken by the United States Bankruptcy Court for the District of Minnesota, sitting *en banc* in *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992). There the court principally focused on the absence of an exception under section 502 for late claims as a basis for disallowance. *Hausladen* involved late filed Chapter 13 claims subject to the same bar date period prescribed by Bankruptcy Rule 3002(c). There, the court noted that Rule 3002 does not explicitly state that timely filing is a prerequisite to allowance and that section 502(b) does not specify tardiness in filing as one of the eight statutorily enumerated grounds for disallowing claims. In discussing various ways a tardily-filed claim may be treated under a Chapter 13 plan, the court aptly noted that treatment or classification of claims is different from their allowance. 11 U.S.C. § 726, however, provides for distribution of property of the estate and that timely filed claims enjoy priority in distribution over tardily-filed claims. *Compare* 11 U.S.C. § 726(a)(2) with (a)(3). In most Chapter 7 cases, like this one, a claim holder's "rung" on the priority "ladder" created under section 726 is crucial because the estate assets are limited. There are usually insufficient assets to pay all claimants in full, and section 726(b) mandates pro rata distribution among all claimants at each level, or rung of the priority ladder, with an absolute priority cutoff. All allowed claimants at a particular level or rung of the ladder must be paid in full before any estate funds can be distributed to holders of claims at the next lower rung. Thus, the race among claimants is to reach the highest rung on the claims ladder.

*Hausladen* is premised upon the proposition that the time limits of Rule 3002(c) cannot be imposed on the exceptions to allowance provided in the statutory language of section 502(b). The rule, however, setting a limitations period does not necessarily conflict with the statute because the latter is silent on tardily-filed claims. Section 502(b)(1) does state an exception of claims unenforceable "against the debtor ... under any ... applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Such exception logically includes the applicable law of the claims bar date established by Bankruptcy Rule 3002(c), promulgated by the Supreme Court of the United States pursuant to the congressional authority granted it by the Rules Enabling Act. *See* 28 U.S.C. § 2075. Thereby, Congress has at least tacitly allowed the Supreme Court to prescribe the applicable statute of limitations contained in Bankruptcy Rule 3002. As a general proposition, statutes of limitation are to be strictly construed. *See In re Friedman*, 15 B.R. 493, 494 (Bankr.N.D.Ill.1981). This principle is appropriately applied in light of the text of Bankruptcy Rule 9006(b). Accordingly, the Court will follow the rationale behind *Chirillo*, as tempered by *Unroe* and *Stavriotis* which are binding precedents in this circuit, while *Hausladen* is not. Thus, the Court declines to follow *Hausladen*.

The Department alternatively relies on the equitable factors enumerated in *In re Miss Glamour Coat Co.*, 80–2 U.S.T.C. ¶ 9737 (S.D.N.Y.1980). *Unroe* recognized the applicability of these factors. 937 F.2d at 350–351. Pursuant to *Miss Glamour Coat*, a court may, in its discretion, allow a

late filed proof of claim. The factors that must be considered include the following:

(1) whether the parties or creditors relied on the Department's initial claim, or whether they had reason to know subsequent proof of claim would follow pending the completion of the audit;

(2) whether other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing this amendment to the Department's proof of claim;

(3) whether the Department intentionally or negligently delayed in filing its amended claim;

(4) the justification, if any, for the failure to request a timely extension of the bar date; and

(5) any other general equitable considerations.

*Id.* at 85, 434–435.

## V. *DISCUSSION*

### A. *Whether the Department's Claim Should be Deemed or Allowed as Timely Filed*

■ The Trustee alleges that because the Department's proof of claim was filed after the bar date, and because the Department never asked for an extension of time to file its proof of claim before the expiration of the bar date as required by Bankruptcy Rules 3002(c)(1) and 9006(b)(3), the claim must be disallowed as untimely. The Court agrees and hereby finds that the Department's claim was admittedly tardily-filed. The Department could have timely moved for an extension of time within the ninety day period as contemplated by Bankruptcy Rule 3002(c)(1). It failed to so move, and hence pursuant to Bankruptcy Rules 3002(c) and 9006(b)(3) the Court will not allow the claim as timely filed.

Moreover, viewed under Rule 15(c), the Court finds that the late filed claim did not arise out of any of the same transactions or occurrences set forth in the four timely claims filed by the Department before the bar date. None of those claims concerned taxes owed by Chandler or the Debtor as a responsible officer of that entity. The Department's purported amendment arises

out of a tax imposed against an entirely different entity than any referenced in its timely filed claims. Additionally, the Court finds that the instant late filed claim is for an amount greatly exceeding the aggregate of all its timely filed claims. Thus, the Court concludes that the subject proof of claim is not a proper amendment to any of the earlier filed proofs of claim, but rather an entirely new claim. *See e.g., Am International,* 67 B.R. at 82 (a claim for approximately $11,000.00 does not give parties notice of a claim of over $2,000,000.00, even though the creditors had notice that the amount of taxes had not yet been determined).

■ Furthermore, the Department contends that by timely filing claims against the Debtor as a responsible officer of The Cook's Cupboard and Eagle Line, Inc., it demonstrated an intent to assert claims against the Debtor and the estate for any liability the Debtor has as a responsible officer for any type of trust fund tax for which it could make a personal claim against him. The Court finds this argument unpersuasive. Taken to its logical conclusion, this argument purports to put the estate, and all its other creditors, on sufficient notice of any and all taxes due and owing by the Debtor from any corporation of which the Debtor was a responsible officer. While the filing of the previous claims against the Debtor as responsible officer of those other corporations may be a clear indication of the Department's intent to hold the Debtor responsible for taxes in those corporations, the Court is not willing to extend this argument as effective notice to all other parties in interest concerning any and all other corporations of which the Debtor may potentially be held to be a responsible officer for sales or use taxes in unspecified amounts. Accordingly, the Court hereby declines to allow the Department to amend its earlier proofs of claim pursuant to Bankruptcy Rule 7015.

■ In addition, the Court declines to allow the late filed claim under its equitable power and exercise of discretion as set

forth in *Unroe* and *Stavriotis*. The Court respectfully distinguishes the result reached here with that in the *Unroe* and *Stavriotis* decisions. First, neither *Unroe* nor *Stavriotis* made reference to Bankruptcy Rule 9006(b)(3), which allows extensions of time only and to the extent provided in Bankruptcy Rule 3002(c). The Court views such omission to reference the mandatory limits of Rule 9006(b)(3) as a major limitation in the appropriate application of those decisions. Moreover, in *Unroe* the debtor scheduled the IRS for a larger amount than the actual amount finally claimed, in contrast to the facts of this matter where the Debtor, at all times, asserted his Fifth Amendment privilege against self-incrimination, and never filed schedules of assets or liabilities. Thus, the Trustee and the interested creditors were left to their own resources to ferret out the Debtor's liabilities, including the instant contested claim which only surfaced of record over a year after the claims bar date had run.

Next, in applying the *Glamour Coat* balancing test, which *Unroe* adopted, the Court concludes that the equities weigh in favor of disallowance of the subject claim. No evidence in the record offers any compelling explanation for the Department's failure to request an extension of the bar date. The Department was a scheduled creditor, received notice of the claims bar date, and timely filed four proofs of claim. The Department filed the late claim one and a half years after the bar date. Moreover, the Court finds that the Department did not exercise due diligence in filing its claim. Pursuant to the testimony of Mark Russell, a revenue auditor for the Department, the investigation of the September 1988 aircraft transfer did not begin until February or March 1990, months prior to the claims bar date. The evidence adduced at trial indicated that the Department was well aware of the pendency of this case. Russell further testified that he was aware in July 1990 that the Debtor was the president of Chandler. The Department, however, did not send out a Notice of Penalty Liability to the Debtor until August 15, 1991. It subsequently waited until January 21, 1992 to file the subject proof of claim. The Court concludes that these belated actions do not constitute due diligence.

Although the Department's actions for purposes of assessment under the Retailers' Occupation/Use Tax Acts may be timely and within the applicable statute of limitations, that is insufficient on these facts to establish the requisite diligence for timely filed bankruptcy proofs of claim as required under Bankruptcy Rules 3002(c) and 9006(b)(3). The Court similarly rejects the Department's arguments that employees of one of its units were unaware of what other employees in its other units were doing. This is a classic bureaucratic excuse that the right hand was unaware of what the left hand was doing or had done. The applicable Bankruptcy Rules do not provide for such an exception. Bankruptcy Rule 3002(c)(1) merely contemplates a timely motion for an extension of time which could have been requested, but was not sought. The Department is the claimant, however, not its various units or employees, and as an entity and claimant is held to the requirements of the Bankruptcy Rules.

In addition, nothing in the record indicates that the Trustee or other interested parties were on notice that there would be any additional claims for taxes due and owing by Chandler, a corporation which was not mentioned in any of the Department's timely filed proofs of claim. Furthermore, no creditor will receive a windfall if the subject contested claim is disallowed. The Trustee has estimated that the unsecured creditors in the estate will receive approximately a twenty percent dividend distribution.

The Department claims the timely filed proofs of claim covered the taxable period of July, 1986 through July, 1989, and the amended claim at issue is for the period of September, 1988. The Department further argues that its efforts to timely file a claim were impeded because Chandler attempted to conceal the taxability of the transaction by having title to the airplane transferred from the retailer, Jack Prewitt & Associates, Inc. to Prewitt Leasing, Inc. so that it

could claim the "occasional sale" exemption. The Department claims that it did not file a timely claim with regard to the aircraft purchase because Chandler never registered with the Department for any type of tax and never filed a tax return with the Department during its corporate existence. Russell, however, admitted that a corporation is not required to register or to file a tax return if it has no income and has not engaged in a taxable transaction. The Department counters that Chandler was seeking to evade payment of the tax. The Court finds this argument misplaced. The Department cannot assert Chandler's acts or omissions as a compelling defense for its own inaction under the facts of this matter in light of the history of the Department's timely prior actions in connection with its other claims in this case. In the pleadings, the Department sets forth the proposition and cites supporting cases that concealment of a cause of action suspends the running of applicable statutes of limitations. Although the Department is contending that the Debtor and Chandler fraudulently concealed the taxability of the subject transaction, no evidence of fraud or conspiracy was presented supporting this conclusion. Therefore, the Court will not further address this argument and rejects same.

Upon balancing the equities, the Court finds that the equities really favor the other unsecured creditors whose allowed claims were timely filed and whose dividends should not be diluted through allowance of the subject contested claim. After all, the Department has other potential sources of recovery for its assessed unpaid taxes, namely Chandler and its assets, if any, other potentially responsible officers of Chandler and their assets, and the Debtor and his assets as a result of the denial of his discharge.

### B. The Underlying Claim Against the Debtor as Responsible Officer of Chandler

Concerning the Trustee's second defense attacking the merits of the Debtor's liability for the Department's claim, the Court must first address the Department's contention that this Court lacks jurisdiction to determine the tax liability of a non-debtor entity such as Chandler. For this proposition, the Department cites several cases. *See In re Brandt–Airflex Corp.*, 843 F.2d 90 (2d Cir.1988); *United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986); *In re Success Tool & Mfg. Co.*, 62 B.R. 221 (N.D.Ill.1986). These cases are distinguishable from the case at bar. In the cited cases, the debtors sought to have the court shift a tax liability to a non-debtor. That is not the situation in this matter. Thus, the Court declines to follow this inapposite line of authority.

Pursuant to 11 U.S.C. § 505(a)(1), the Court is authorized to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Several courts have held that the bankruptcy court may apply section 505(a) to determine the tax liability of parties other than the debtor. *See In re Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992) (bankruptcy courts have jurisdiction over disputes involving unemployment compensation tax liability incurred by debtors, but same may include tax disputes concerning non-debtors when that dispute affects the debtors and when exercise of that jurisdiction is necessary to rehabilitate the debtor or to administer its estate effectively); *In re Goldblatt Bros., Inc.*, 106 B.R. 522 (Bankr.N.D.Ill.1989) (court held that determination of whether creditors' committee was responsible for paying taxes on interest earned on money held in an account established pursuant to the Chapter 11 plan was a core proceeding); *In re John Renton Young, Ltd.*, 87 B.R. 635 (Bankr.D.Nev. 1988) (court had jurisdiction to determine debtor's motion for injunctive relief from a one-hundred percent penalty tax assessment against the non-debtor obligor based on his relationship with the debtor as its president and only shareholder); *In re Jon*

*Co.,* 30 B.R. 831 (D.Colo.1983) (court determined the 26 U.S.C. § 6672 tax liability of the debtor's employees); *In re H & R Ice Co.,* 24 B.R. 28 (Bankr.W.D.Mo.1982) (same); *In re Major Dynamics, Inc.,* 14 B.R. 969 (Bankr.S.D.Cal.1981) (court stayed IRS audits, assessments and collections directed at the creditors of the estate). In *Major Dynamics,* the court acknowledged that the legislative history of section 505 focuses on tax obligations of the debtor or the debtor's estate. It held, however, that the "any tax" language used in section 505(a)(1) must control and "that the Bankruptcy Court has jurisdiction to determine disputes between third party creditors and the IRS in an appropriate case." 14 B.R. at 972. The court opined that an "appropriate case" included "tax disputes of third parties other than the debtor *provided, however,* that the IRS activity to be enjoined directly affected the debtor or the estate, and that the exercise of such jurisdiction was necessary to the rehabilitation of the debtor or the orderly and efficient administration of the debtor's case." *Id.* (emphasis in original).

 In the instant matter, the parties ask the Court to determine the Debtor's liability as responsible officer of a non-debtor corporation. The Debtor's liability, in part, depends on whether Chandler actually owes the tax. The determination of the tax assessed against Chandler directly affects the Debtor, who was denied a discharge, and the potential dividend distribution from the estate. Moreover, the determination of this issue is necessary for the orderly and efficient administration of the estate. *See Major Dynamics,* 14 B.R. at 972. Having been denied a discharge, the Debtor has a personal stake in the outcome of Chandler's (and his) tax liability. *See Jon Co.,* 30 B.R. at 833–834. Thus, under the plain language used in section 505(a)(1), the Court can examine the asserted tax liability of Chandler. *See e.g., Wolverine Radio,* 930 F.2d at 1140–1143. Moreover, under 11 U.S.C. § 558, the Trustee may assert any defense available to the Debtor for the benefit of the estate including defenses personal to the Debtor. Thus, even though the Debtor may not have protested the notice of assessment sent by the Department to him, the Trustee may still assert substantive defenses to the claim as argued here. *See* 11 U.S.C. § 558.

The Department asserts and has assessed personal liability on the Debtor as a corporate officer of Chandler pursuant to Section 13½ of the Retailers' Occupation Tax Act, which provides in pertinent part:

Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed ... and who willfully fails to file such return or to make such payment to the Department or willfully attempts in any other manner to evade or defeat the tax shall be personally liable for a penalty equal to the total amount of tax unpaid by the corporation, including interest and penalties thereon....

Ill.Rev.Stat. ch. 120, para. 452½ (1991).

The Illinois Supreme Court has held that the willful failure to pay requirement is satisfied with a showing of "voluntary, conscious and intentional failure" to make the tax payments. *Department of Revenue v. Heartland Invest., Inc.,* 106 Ill.2d 19, 30, 86 Ill.Dec. 912, 476 N.E.2d 413 (1985) (quoting *Department of Revenue v. Joseph Bublick & Sons, Inc.,* 68 Ill.2d 568, 577, 12 Ill.Dec. 265, 369 N.E.2d 1279 (1977)); *Department of Revenue v. Corrosion Systems, Inc.,* 185 Ill.App.3d 580, 583–584, 133 Ill.Dec. 647, 649, 650, 541 N.E.2d 858, 860, 861 (4th Dist.1989). Moreover, "in a civil action, wilful conduct does not require bad purpose or intent to defraud the government." *Heartland Invest.,* 106 Ill.2d at 30, 86 Ill.Dec. 912, 476 N.E.2d 413. The *Bublick* court further found that the determination of willful failure "is an issue of fact to be determined by the trier of the fact on the basis of the circumstances and evidence adduced in the particular case." *Bublick,* 68 Ill.2d at 577, 12 Ill.Dec. 265, 369 N.E.2d 1279.

The Retailers' Occupation Tax Act further establishes the procedure for creating

and assessing the liability against a corporate officer:

> The Department shall determine a penalty due under this Section according to its best judgment and information, and such determination shall be prima facie correct and shall be prima facie evidence of a penalty due under this Section. Proof of such determination by the Department shall be made at any hearing before it or in any legal proceeding by reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. Such reproduced copy shall, without further proof, be admitted into evidence before the Department or any legal proceeding and shall be prima facie proof of the correctness of the penalty due, as shown thereon.

Ill.Rev.Stat. ch. 120, para. 452½.

The Department established prima facie proof of the correctness of the penalty by introducing a copy of the Notice of Penalty Liability issued against the Debtor. (Department Exhibit No. 1). At trial, the Trustee presented evidence to the contrary, namely the opinion testimony of John Anderson which concluded the sale was not taxable, as well as the supporting certificate of occasional seller exemption executed on behalf of Prewitt Leasing, Inc.. As a result of this evidence, the ultimate burden of proof and persuasion shifted back to the Department. *See generally, People ex rel. Dept. of Revenue v. National Liquors Empire, Inc.*, 157 Ill.App.3d 434, 439, 109 Ill. Dec. 627, 630–631, 510 N.E.2d 495, 498–499 (4th Dist.1987). The Department's assessment notice to the Debtor and the prima facie effect of para. 452½ without more evidence are insufficient. Even proof that Chandler may be liable for the tax is not *ipso facto* sufficient to show the Debtor liable as a responsible officer.

█ The Court finds that the Department has failed to meet its burden and establish that the Debtor willfully failed to pay the tax assessed against Chandler for the sale of the aircraft. On the required element of corporate control, it is uncontested that the Debtor was president and sole director of Chandler. Although by no means certain, the Court can reasonably infer that the Debtor, as such officer and director, was in control of Chandler. No compelling evidence, however, was presented on the issue of whether the Debtor's failure to pay the claimed tax was voluntary, conscious and intentional. John Anderson testified that Lawrence Pluhar acted as the Debtor's chief financial officer, and thus is putatively another potential responsible Chandler officer against whom the Department could proceed. Chandler's annual corporate report for 1988 showed two other officers who may be additional potentially responsible officers. (Department Exhibit No. 19, p. 3). There was no evidence presented of the Debtor's voluntary, conscious and intentional failure to pay the tax. Evidence that the Department sent the notice of assessment to the Debtor, and he has not paid same or responded to the Department's demands, is not the equivalent of a conscious or intentional failure on his part.

As a matter of law, the automatic stay under 11 U.S.C. § 362(a) was effective from the time the petition was filed in February, 1989, over two years prior to the Department's August 15, 1991 issuance of its Notice of Penalty Liability to the Debtor. That his pre-petition property which passed to the Trustee as property of the bankruptcy estate under 11 U.S.C. § 541 was not available to satisfy this contested claim, does not serve as the equivalent of adequate proof of the Debtor's voluntary, conscious and intentional failure to pay.

In addition, in *Corrosion Systems*, the corporate officer against whom the Department sought to impose responsible party liability, signed the corporation's tax reports and checks accompanying same. 185 Ill.App.3d at 583–584, 133 Ill.Dec. at 650, 541 N.E.2d at 861. The court there concluded, however, that "the officer had relied on his accountant, and there was no evidence 'that the defendant consciously, voluntarily, intentionally, knowingly or recklessly failed to make the appropriate retailers' occupation tax payments.'" *Id.* (quoting *Department of Revenue v. Mar-*

*ion Sopko, Inc.*, 84 Ill.App.3d 953, 955, 40 Ill.Dec. 487, 489, 406 N.E.2d 188, 190 (2d Dist.1980)). Based upon the evidence that the Debtor has merely failed to respond to the Department's notice, the Court is unable to conclude that the Debtor's failure to pay the tax was willful or voluntary, conscious and intentional.

## VI. *CONCLUSION*

For the reasons set forth herein, the Court hereby sustains the Trustee's objection to the allowance of the Department's subject proof of claim, as amended.

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## *MEMORANDUM OPINION*

This matter comes before the Court on the motion for reconsideration filed by the Illinois Department of Revenue (the "Department") of the Court's Memorandum Opinion and Order dated November 25, 1992, and the response in opposition filed by Thomas E. Raleigh, Chapter 7 Trustee (the "Trustee"). For the reasons set forth herein, the Court hereby denies the motion.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II. *APPLICABLE STANDARDS*

"Motions to reconsider" are not formally designated by either the Federal Rules of Bankruptcy Procedure or Federal Rules of Civil Procedure, except as provided in 11 U.S.C. § 502(j) and Bankruptcy Rule 3008 which allow reconsideration of orders allowing or disallowing claims against the estate. Section 502(j) provides in relevant part that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equi-

ties of the case." 11 U.S.C. § 502(j). Bankruptcy Rule 3008, in turn, provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Fed.R.Bankr.P. 3008. Reconsideration of both allowed and disallowed claims may be made at any time before the case is closed. *In re Resources Reclamation Corp.*, 34 B.R. 771, 773 (Bankr.9th Cir.1983). The Court should weigh the extent and reasonableness of any delay, prejudice to the debtor and other creditors, effect on efficient administration, and the moving creditor's good faith. *Id.* Rule 3008 has been held permissive and does not require that a party file a motion to reconsider before appealing. *Walsh Trucking Co. v. Insurance Co. of North America*, 838 F.2d 698 (3rd Cir.1988).

The Seventh Circuit Court of Appeals has instructed courts to treat all substantive post-judgment motions filed within ten days of judgment under Rule 59. *Charles v. Daley*, 799 F.2d 343 (7th Cir.1986). Motions made thereafter are considered under the provisions of Rule 60 of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 9024. Because the motion at bar was filed and served on December 4, 1992, within ten days of the judgment, the procedural standards and authorities construing section 502(j) and Rules 59, 3008 and 9023 control.

Motions made under Rule 59 serve to correct manifest errors of law or fact, or to consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984); *F/H Industries, Inc. v. National Union Fire Ins. Co.*, 116 F.R.D. 224, 226 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp.

224, 244 (N.D.Ill.1976); *In re BNT Terminals, Inc.*, 125 B.R. 963, 976–977 (Bankr. N.D.Ill.1990). The purpose of a motion to alter or amend "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals*, 125 B.R. at 977. "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

### III. *THE DEPARTMENT'S ARGUMENTS*

The Department makes several arguments in its motion. First, it contends that Bankruptcy Rule 3002(c) conflicts with 11 U.S.C. § 726(a)(2) and (a)(3), the statutory provision governing payments of claims, because it specifically contemplates allowance of late-filed claims by providing for their payment. Second, the Department argues that pre-petition unsecured priority claims that would be so classified under 11 U.S.C. § 507(a)(7), even if late-filed, such as the claim at bar, are entitled to payment and distribution along with timely filed pre-petition unsecured claims under section 726(a)(1). This is so, the Department maintains, because the text of section 726(a)(1) makes no reference to effectively subordinated dividend distributions of late-filed priority claim; section 726(a)(2) is explicitly inapplicable to priority claims by its text; and the provisions of section 726(a)(3) likewise do not specifically exclude claims that would otherwise be accorded administrative priority under section 507. Only claims of general unsecured creditors who file late claims receive distribution under section 726(a)(3).

Next, the Department urges the Court to follow the recent opinion of Judge Wedoff in *In re Rago*, 149 B.R. 882 (Bankr.N.D.Ill. 1992) which followed *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992). *Hausladen* held that late filing of a claim is not grounds for its disallowance under section 502(b). *Rago*, in turn, held that priority claims, even though late filed, are entitled to distribution under section 726(a)(1). The Department concludes that these two opinions are recent significant changes in extant case law concerning contested late claims allowance and payment, and the Court should follow these decisions by holding Bankruptcy Rule 3002(c) invalid as in conflict with sections 502(b) and 726. The Department concludes that because section 726(a)(2)(C) and (a)(3) provide for payment of late-filed claims, they conflict with and override the provisions of Bankruptcy Rule 3002(c), notwithstanding the Seventh Circuit cases which do not address the perceived conflict, but assume the validity of the Rule. The Department contends that in the Chapter 7 context, there is no legal dispute that late claims are allowed. The real issue is classification for distribution purposes.

Lastly, concerning the merits of the underlying claim, the Department argues it established and proved a prima facie case, notwithstanding the Trustee's evidence and objections thereto, citing as supporting authority two Illinois Appellate Court decisions: *Quincy Trading Post, Inc. v. Department of Revenue*, 12 Ill.App.3d 725, 298 N.E.2d 789 (4th Dist.1973) and *Department of Revenue v. Corrosion Systems, Inc.*, 185 Ill.App.3d 580, 133 Ill.Dec. 647, 541 N.E.2d 858 (4th Dist.1989). The Court notes that it discussed and applied *Corrosion Systems* in its prior Opinion. Under this argument, the Department asserts that because the Trustee did not show that the Debtor was not a responsible officer, and there were no similar opinion letters of counsel on the non-taxable nature of the subject transaction issued to the purchasing corporation or its officers, or that the Debtor ever relied on the legal opinion that was given to the lender on the transaction, the Department's evidence is sufficient to support allowance of the underlying claim on its merits. The Department concludes that the Trustee had the burden of proving that the Debtor's failure to pay the claimed tax was not willful, rather than on it to show that the Debtor's failure to pay was willful.

## B. The Trustee's Arguments

The Trustee counters with numerous arguments in opposition to the Department's motion. First, the Trustee notes that the motion does not show that the Court made any manifest error of fact or law, nor is the Department proffering any newly discovered evidence. Second, the Trustee counters that the Department's motion raises a new argument under *Rago*—that a tardily-filed proof of claim cannot serve as a basis for disallowance of a claim—which was not urged at the time of trial, and is not properly advanced under Rule 59. Third, the Trustee points out that the Court in its Opinion had considered the *Hausladen* view and rejected same for reasons stated therein. Fourth, the Trustee asserts that notwithstanding *Hausladen,* the analysis contained in *Rago* is flawed, and has effectively been rejected in *In re Unroe,* 937 F.2d 346 (7th Cir.1991) and *In re Stavriotis,* 977 F.2d 1202 (7th Cir.1992). As additional authority the Trustee cites *Wilkens v. Simon Bros., Inc.,* 731 F.2d 462 (7th Cir.1984) (per curiam) in which the Seventh Circuit noted that both the text of the Bankruptcy Code and the Bankruptcy Rules must be considered in determining whether a claim is to be disallowed. *Wilkens* looked to the Rules then in effect under the prior Bankruptcy Act in holding that a Chapter 13 claim was required to be filed no later than six months after the initial creditors' meeting.

The Trustee thus urges the Court to adhere to its view that the text of section 502(b)(1) effectively provides for disallowance of late claims as "unenforceable" under "applicable law" which the Court found included the time limits of Bankruptcy Rule 3002(c). Next, the Trustee contends that the *Rago* analysis would not be applicable here under the facts of this matter because the Department's subject claim was asserted to be an amendment to previously timely claims, rather than a new claim, merely tardily-filed, unlike the claimant in *Rago* which had no notice of the case or its claim prior to the expiration of the claims bar date. Hence, the Trustee maintains that the Department cannot now, on its motion for reconsideration, argue that the subject tardily-filed proof of claim constitutes an entirely new claim, rather than an amended claim previously argued.

The Trustee further asserts that properly applied principles of statutory construction compel relegation of the Department's tardily-filed claim to payment and classification under section 726(a)(3) and (a)(4). On this point, the Trustee argues that section 726(a)(3) is for unsecured claims which are tardily-filed, and are not of a type specified in section 726(a)(2)(C), such as the Department's claim at bar, except the portion thereof which is a claimed penalty which would be more properly classified under section 726(a)(4). Consequently, the Trustee concludes tardily-filed unsecured claims, whether entitled to priority treatment under section 507 or not, do not require treatment and payment under 726(a)(1). The text of the various subsections comprising section 726 which contains enumerations of specific exclusions from various subparagraphs, is indicative that section 726(a)(3) should apply to all cases involving late claim payments not specifically excluded.

An additional point argued by the Trustee is that by extending the result reached in *Rago* to this case, havoc is wreaked on dividend payments. Affording late priority claims with an equal treatment to timely-filed allowed claims, notwithstanding established claims bar dates, forces objecting debtors, trustees and other interested parties to thereafter institute subordination actions against tardily-filed claims pursuant to 11 U.S.C. § 510. In this regard, the Trustee argues that if the Court follows the *Rago* result, then principles of equitable subordination should be applied here to equitably subordinate payment of any part of the Department's claim it favorably reconsidered because here, unlike the tax claimant in *Rago,* the Department knew of this case and filed several timely claims. Lastly, on the merits on the underlying claim, the Trustee contends that the motion merely challenges the Court's factual finding that there was no supporting evidence showing that the Debtor willfully failed to pay the claimed tax assessed. Such a chal-

lenge to the Court's factual findings cannot be appropriately made on a motion for reconsideration.

## V. *DISCUSSION*

One crucial point to emphasize is that the process of bankruptcy claim allowance or disallowance pursuant to the provisions of section 502(b) and Bankruptcy Rules 3007 and 3008 is a separate and distinct aspect of estate administration from the related process of payment. Allowed claims are paid through distributions from the bankruptcy estate, as defined in section 541, made by the Trustee pursuant to section 704 and Bankruptcy Rule 3009, through the provisions of, and in the priorities established under, section 726. Frequently, these two separate, but related, steps of claim allowance and claim payment practically occur in close proximity. The real issue here, however, involves the disallowance of the Department's claim under section 502(b)(1) and Bankruptcy Rule 3002(c), not any claim classification issues for distribution purposes under section 726 as the parties unnecessarily argue for the first time in this motion. Only claims allowed under sections 501, 502, 503 and 507, and not disallowed under section 502(b), receive distributions under the priorities established in section 726. Because the Department's claim was disallowed both as untimely and on the merits, section 726 classification issues are irrelevant and immaterial to the claim disallowance issues.

■ For purposes of this contested matter, one ultimate issue is whether the Court's prior ruling disallowing the Department's claim pursuant to Bankruptcy Rule 3002(c) violates section 502(b)(1) of the Code, and secondly whether the Court's ruling disallowing the Department's claim on the merits was in error. After carefully considering and reconsidering the arguments, and with all due respect to the learned decisions in *Hausladen* and *Rago*, the Court disagrees with those conclusions that Bankruptcy Rule 3002(c) conflicts with section 502(b)(1). Neither opinion discusses or focuses on the operative language in section 502(b)(1). As previously stated in the Court's Opinion, the plain meaning of section 502(b)(1) provides for disallowance of a contested claim, if same is unenforceable against the Debtor for *any* reason other than because it is contingent or unmatured. This reading of section 502 and the end result is supported by its sparse legislative history. *See* H.R.Rep. 595, 95th Cong. 1st Sess. 352 (1977); S.Rep. 989, 95th Cong.2d Sess. 62 (1977) U.S.Code Cong. & Admin.News pp. 5787, 5848, 6308. There is no limit either in the text of section 502(b)(1) or its legislative gloss which precludes resort to the statute of limitation created by Rule 3002(c) as appropriate applicable law.

■ In the Rules Enabling Act, 28 U.S.C. § 2075, Congress empowered the Supreme Court of the United States to prescribe rules for the practice and procedure in cases under Title 11. Section 2075 expressly provides that such rules shall not abridge, enlarge or modify any substantive right. Accordingly, it has been held that the rule making power of the Supreme Court is limited and to be exercised consistently with the substantive provisions of Title 11. *In re Itel Corp.*, 17 B.R. 942 (Bankr.9th Cir.1982). Rules promulgated pursuant to section 2075 have the force of law pursuant to that authority granted by Congress. *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 440 (Bankr.S.D.N.Y. 1991). The bankruptcy court is bound to follow, without exceptions, the rules promulgated by the United States Supreme Court unless a rule is inconsistent with the statute, in which case the Bankruptcy Code controls over inconsistent procedural rules. *In re Wilferth*, 57 B.R. 693, 694 (Bankr. D.N.M.1986). Rules are entitled to a presumption that they were promulgated within the proper authority of the Supreme Court and do not affect substantive rights. *In re Neese*, 87 B.R. 609, 611 (9th Cir.BAP 1988). A party contending that a court rule violates substantive rights bears a heavy burden of proof. *Neese*, 87 B.R. at 611; *In re Management Data Services, Inc.*, 43 B.R. 962, 966 (Bankr.W.D.Wash. 1984). The Court concludes that the operative text of section 502(b)(1) can be harmo-

niously construed and applied through the statute of limitations provided by Bankruptcy Rule 3002(c).

The Court rejects the Department's argument that Bankruptcy Rule 3002(c) patently conflicts with the distribution scheme of section 726. In bankruptcy estates where there is sufficient money or other liquidated assets to pay allowed priority claims that have been filed under section 726(a)(1), then after all claims at that distribution level under section 726 have been paid in full, to the extent there are additional estate funds on hand to pay claims that fall under section 726(a)(2), those proceeds are distributed pro rata to claim holders falling in that class. If there are sufficient funds on hand to fully pay all claimants in that class of claims, the excess is then distributed down to the section 726(a)(3) level of tardily-filed claims. Although infrequent, occasionally there are bankruptcy estates in which there are sufficient funds to pay all claims timely and tardily-filed leaving an excess to cover payment of penalty, fines or punitive damage claims under section 726(a)(4). If those claims are all paid in full, then distribution of post-petition interest is paid to allowed claim holders under section 726(a)(1)–(4) pursuant to section 726(a)(5). Thereafter, any surplus of the estate is to be paid to the debtor pursuant to section 726(a)(6). In such cases, there is no need for a trustee to object to late claims because there is enough to pay all claims.

In the vast majority of Chapter 7 estates, however, like the case at bar, there are insufficient assets to pay all allowed claims that are timely filed whether priority under section 726(a)(1), or unsecured under section 726(a)(2)(A). It is precisely in cases such as this, where there are not enough assets to pay all claim holders, that the impact of Bankruptcy Rule 3002(c) becomes important. It is not logical to extend the first priority in distribution under section 726(a)(1) to tardily-filed claims because section 726(a)(2)(A) and (B) provides that timely-filed allowed claims take priority over tardily-filed allowed claims under section 726(a)(2)(C) and (a)(3). Moreover, the De-

partment's classification argument only impacts on allowed claims. This matter, however, focuses on its claim disallowed under 502(b)(1), rather than the distribution classification scheme under section 726. Therefore, it is unnecessary, for proper determination of this matter, to categorize the Department's claim under section 726, had it not been disallowed, nor address the equitable subordination arguments newly raised by the Trustee. The Court need not reach such subordination and classification issues discussed in *Rago*. Only allowed claims are entitled to receive distributions from the estate. Thus, the principal focus and discussion in *Rago* concerning section 726 is inapposite and not controlling in this matter.

The result reached here is also in accord with *United States v. Vecchio*, 147 B.R. 303 (E.D.N.Y.1992). There the bankruptcy court disallowed two claims of the Internal Revenue Service which were filed late. Similar to the tax claimant in *Rago*, the IRS in *Vecchio* argued that it should be entitled to section 726(a)(1) treatment. The district court on appeal held that the IRS's late claims should be relegated to section 726(a)(3) status, and same extends to all tardy claims, both priority and non-priority. *Id.* at 306. *Vecchio* cited with approval *In re Global Precious Metals, Inc.*, 143 B.R. 204 (Bankr.N.D.Ill.1992), which found that a creditor without notice is protected by section 726(a)(2), but otherwise the ninety-day filing requirement of Bankruptcy Rule 3002(c) applies. *Vecchio* noted that judicial efficiency, certainty and finality with respect to bankruptcy proceedings would be severely hampered if creditors with priority claims were able to assert them at any time, regardless of having received timely notice of the bankruptcy proceeding. 147 B.R. at 307. The contrary view espoused in *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990), urged by the Department, is rejected. The *Vecchio* court concluded that a broad reading of *Cardinal Mine* does not subsume the Bankruptcy Rule 3002(c)(1) ninety-day deadline with regard to federal tax claims, it makes the Rule inapplicable, wherever a priority claim is allegedly asserted. 147

B.R. at 307. A creditor could appear years after receiving timely notice of the bankruptcy, and if his claim was a priority claim, it would be protected. That result is inequitable especially under the facts of this matter. The controlling law and equities of the case militate in favor of the Trustee's position, and against that taken by the Department.

 On the merits of the underlying claim and the objection thereto, there was no evidence furnished at trial that the Debtor's failure to pay the subject claim was willful. Contrary to the Department's arguments, the Department had the burden of proof to show the Debtor's failure to pay the subject claim was willful, rather than the Trustee, as the objector, having the burden to show that the Debtor's failure to pay was not willful. No evidence was adduced by the Department to show that the Debtor's failure to pay the claimed tax was a voluntary, conscious and intentional failure as required by the controlling holding in *Department of Revenue v. Heartland Invest., Inc.*, 106 Ill.2d 19, 30, 86 Ill.Dec. 912, 476 N.E.2d 413 (1985). The other case cited by the Department, *Quincy Trading Post*, did not involve assessment of a tax liability against a responsible corporate officer under 35 ILCS 120/13½, and is therefore inapposite and not on point.

A recent opinion of the Seventh Circuit dealing with contested bankruptcy claims provides instructive dicta: "[e]nforcing the Bankruptcy Rules according to their terms cannot be an abuse of discretion." *In re Danielson*, 981 F.2d 296, 299 (7th Cir.1992). Although *Danielson* did not decide the issues raised here, it expressly references Bankruptcy Rule 3002(c), noting that the Seventh Circuit regularly holds that sloth, ignorance or other negligence does not qualify as excusable negligence warranting enlargement of time under Bankruptcy Rule 9006(b)(1). *Id.* at 298. *Danielson* cites *Unroe* with approval and *Taylor v. Freeland & Kronz*, —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), which noted that courts have no standby power to excuse violations of statutes and rules. In addition, in *Holstein v. Brill*, 987 F.2d 1268

(7th Cir.1993), the court, in discussing amendments to claims, noted: "[l]eave to amend should be freely granted ... but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date." *Id.* 987 F.2d at 1270.

## VI. *CONCLUSION*

For the foregoing reasons, the Court hereby denies the Department's motion for reconsideration.

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.